Oyez, oyez, oyez. The Honorable Appellate Court, 5th District, State of Illinois, is now in session. Your Honorable Justice Bowie presiding along with Justice Moore and Justice McKinney. First case this morning is 522-0289, Moore v. Mandell. Arguing for the appellant is Adam Johnson. Arguing for the appellee is Clyde King. Each side will have 15 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Good morning, counsel. How is everybody? Morning, Your Honor. How are you? Doing well. I'd like to say a couple things. First of all, I'd like to welcome Justice McKinney. This is his first docket setting as a new justice on our court. We're happy to have him here and happy to have him on the court. Look forward to working with him. I'd like to put that on the record as we start our proceedings today. Second of all, just asking this morning obviously was a little bit of an issue. Of course, we have no problem with non-video participants, especially since we're Zoom rather than in person. We just ask that if you're going to be a non-video participant to give the clerk a little heads up in the morning of the oral argument. That helps our setup immensely. I appreciate that. With all that being said, Mr. Johnson, are you ready to proceed? I'm ready, Your Honor. Go right ahead. You're a little muted. If you could make sure you speak up so we can hear you. I will, Judge. Thank you. May it please the court. Your Honor, my name is Adam Johnson. I represent the defendant appellant, Teresa Mandel, in this case. The underlying action was a personal injury case tried to a jury in Jackson County, Illinois. An issue and dispute between the parties were whether the plaintiff sustained a right shoulder rotator cuff tear in the accident. If so, whether she continued to have any ongoing symptoms after it was surgically repaired shortly thereafter. There are three points on appeal. First, that the trial court improperly excluded evidence of a prior injury. Second, that the trial court improperly excluded admissions made by plaintiff to her physical therapist shortly before trial, denying a loss of normal life. And third, that the trial court improperly denied impeachment evidence of plaintiff's expert, Dr. Blair Rohde. All three points are reviewed. Counsel, what is the standard of review on all those issues? Thank you, Justice. For all three issues, the court reviews the decisions for an abuse of the trial court's discretion. I like to set the stage with kind of the the contentions between the parties and how central it was. Just very quickly, that plaintiff, one, had the rotator cuff tear, and two, that it plaintiff asked the jury to award over $800,000 in future pain and suffering in future loss of normal life. The jury ultimately awarded an award of over $800,000, $700,000 of which was devoted to past and future pain and suffering and loss of normal life. Regarding the first point on appeal, that the trial court improperly excluded evidence of the prior injury. The injury at issue was a emergency room visit where the plaintiff appeared at the emergency room with significant pain that she reported had been going on for several days, the better part of a week. She reported 9 to 10 out of 10 pain and was given a diagnosis, a differential diagnosis of, among other things, a rotator cuff tear, which is the exact same injury that she was found to have after the underlying accident. The final diagnosis the plaintiff was given was a likely rotator cuff injury versus strain, and the rotator cuff injury that was described in the differential diagnosis was specifically a tear. The injury, as I mentioned, was significant. Plaintiff complained of significant pain, and she was given morphine in the emergency room. It's the defense's contention, and it was their contention at trial, that that evidence should have come in through one of three witnesses, through defense expert Dr. Claude Miller, through plaintiff herself, and also through plaintiff's medical expert Dr. Blair Rohde. Dr. Miller is an orthopedic surgeon of some 30 years who, among other things, performs rotator cuff tear surgeries. Dr. Miller, it was undisputed, is qualified to opine generally on these matters, and it was undisputed that he reviewed medical records, thousands of pages of them, including things that no other medical provider had seen, and that he reviewed MRIs, X-rays, and other radiographic studies, which he was the only expert to testify that he'd seen all those, including a 2016 MRI, an MRI in, I think, 2019, and of course the 2009 X-rays. It was Dr. Miller's testimony at his evidence deposition that that factual predicate was the type of information that a reasonable orthopedic surgeon working in the field would use draw conclusions about the origin of the rotator cuff tear that Ms. Moore was found to have after the accident issue. That wasn't challenged by anyone, and it was also Dr. Miller's opinion, to a reasonable degree of medical certainty, given without any equivocation, that it was his opinion, more likely than not, that the rotator cuff tear that plaintiff alleged was caused by the accident issue was, in fact, caused by the 2009 injury, and that it also progressed through time through just natural arthritis and degeneration from 2009 until it was identified in 2016. Notably, Dr. Miller was able to compare the 2016 MRI, which reflected that there was, in fact, a tear, and compare that to the differential diagnosis of rotator cuff tear that was found in the 2009 record, and which was made by the medical provider who treated him at that time. Counsel, let me ask you this. Judge Sulverson ruled that there was no basis to say that a rotator cuff existed in 2009, and how is that not consistent with Boykin? Well, Judge, I would tell you the emergency room doctor disagreed with Dr. Sullivan when the emergency room doctor included that as part of the differential diagnosis. What Boykin instructs us is that we need an expert opinion in order to connect it up causally. What Illinois requires in order for an expert to do that is that the facts that they're relying on are the type of facts that would be relied upon by a reasonable expert in the field, which is exactly the testimony that Dr. Miller provided. After that, once there is that requisite factual predicate, Illinois law is clear that the bases for the opinion are not subject to the trial court's exclusion. They're for the jury to weigh, Judge. So I would say that it's entirely consistent with Boykin for a defense expert to testify that he's using facts that a reasonable expert would use in the field to draw those conclusions, when he's, in fact, adopting one of the opinions that was issued by the emergency room doctor, and he's testifying to a reasonable degree of medical certainty that, based on that factual predicate, he can draw the conclusion as to causation. I'd also... Sorry, Judge. One of the bases that she used was the fact that there was no MRI or other evidence of a rotator cuff injury in 2009. Is that true? That is something the trial court mentioned, Judge, and it would be my view that that's a he testified to in his evidence deposition, is that there would be some uncertainty for the emergency room doctor about whether a tear existed in the first place, because the emergency room doctor did not have the benefit of an MRI showing a tear. In other words, the emergency room doctor would never know one way or another whether that rotator cuff had a tear in it at all. But Dr. Miller is possessed of different evidence. He has an MRI showing that there is a rotator cuff tear in 2016. The only question then is whether it was present there back in 2009. It was Dr. Miller's opinion, again, based on a reasonable degree of orthopedic certainty and a guy who's been repairing rotator cuff tears for three decades, that you can connect one with the other. There was no challenge that the types of facts that Dr. Miller was relying on were not the types of facts that a reasonable expert would use in the field. And as a result of that, any challenge to the strength of that factual basis was probably for the jury to decide, not for the trial court to exclude. The other way I think this evidence should have come into evidence is through impeachment of the plaintiff. Plaintiff testified in her discovery deposition that she didn't have any prior injuries to that same shoulder. And that testimony was not just the record, but it was suspect. This was a serious injury and it just so happened to be to the exact same shoulder where she was given a differential diagnosis of literally the same thing, the rotator cuff tear. It was strong enough that plaintiff was at the hospital telling the emergency room doctor had been there for half a week and she was given morphine. It's the type of injury a jury might expect the plaintiff to remember. And I would ask the court to look to the testimony in the offer of proof. But counsel, wasn't one of the other basis of Judge Silverson's ruling the fact that it had been so long that it was six years? That is, Judge. I'm glad you brought that up. The trial court articulated a standard which is found in the report of proceedings at page 348 and again at 507. I'll read it. The court has already ruled that the June 2009 injury is far removed from the accident. All the case law talks about parameters. And I think if you read the case law talking about parameters, it talks about three to five years. And I think we all know what the case law says. There is no Illinois case law or statute that applies a three to five year bright line test whereby after that time period, pre-existing injuries are no longer relevant and admissible. So the trial court articulated and applied a test that it believed was reflected in Illinois case law that simply doesn't exist. And then it used that standard, which is inconsistent with Illinois law, to exclude the evidence. As this court has indicated, it is always an abuse of discretion for the court to get the law wrong, to apply the wrong law to facts. So as a result of that, it would be defense's view that Dr. Miller was well qualified to offer the testimony that he was relying on reasonable facts that an expert would have been entitled to use in the field. And that any challenge to the sufficiency of that factual basis should have been properly reserved for the jury's determination, not the subject of exclusion by the law. Your Honor, if I could move to the second point that the trial court improperly denied the defense the right to cross-examine plaintiff regarding statements she made in physical therapy. These were, I can't emphasize enough, just critical to the defense's theory that the evidence that plaintiff experienced any ongoing problems was thin at best and potentially subject to some very serious challenges. There was no medical testimony of any kind from 2019 to the time of the trial in 2021, late 2021, where plaintiff received any medical care of any kind related to the shoulder or otherwise reported any ongoing injuries. The last medical care for plaintiff related to that shoulder was the referral to Dr. Blair Rohde, who it was the defense's counsel, where Dr. Rohde had recommended that if plaintiff continued to have or alleged to have any ongoing problems, she should go to physical therapy. Plaintiff entirely ignored that advice and never went to physical therapy. So the only proof of any kind that plaintiff experienced any loss of normal life or pain and suffering for that right shoulder were plaintiff's self-serving subjective statements that she was having those problems. Plaintiff was asked at trial on direct examination to describe the ways in which she believed that she was affected by her shoulder injury and loss of life. She went into great detail about how it affected her life, that she couldn't do the things that she did before, particularly daily living activities. Cooking was something that she raised as something that really affected her life that she could no longer do. She couldn't cook for family and friends. There was testimony that she couldn't take out the garbage and get it out of the bathtub and sweep her floors. All these daily living activities were things that plaintiff said that she couldn't do or she could only do with significant difficulty. In each instance, those were things that according to the statements she made at physical therapy, she could do with no difficulty of any kind. So the statements in the physical therapy, which was just months before trial, were directly contrary to plaintiff's direct examination testimony where she had not just some difficulties, but significant difficulties and outright prohibitions in some respects. So it was the defense's contention that defense was entitled to cross-examine the plaintiff with those admissions, which contradicted her general testimony on direct. I would also say that that became even more significant and their exclusion became even more prejudicial when on direct examination after that evidence had been excluded. For some reason, plaintiff's counsel read the document to the plaintiff on the stand, didn't identify the document as a medical record, but literally read those statements to the plaintiff on direct examination and invited her to agree or disagree with the truths of those statements. Is it true that you had no difficulty performing household tasks? Is it true that you had no difficulty performing cooking activities? Those sorts of things. And in each of those instances, plaintiff, they then gave testimony on direct, directly contradicting the specific statements that she made in the physical therapy form. So from the defense's perspective, we were entitled to cross-examine her with those statements and admissions in the first instance, because they were inconsistent with her general testimony. And even after that, when plaintiff gave testimony specifically about that document and contradicted those literal statements, defense was certainly entitled to cross-examine her with that same document to perpetuate the inconsistencies and to identify the nature and the context in which those inconsistencies were given. The trial court allowing one side to use a document and then allowing that side to contradict the statements in the document in denying the other side the opportunity to use literally the same document to create evidence that would have tended to rebut plaintiff's claim of loss of normal life and pain and suffering was significantly prejudicial to the defendant. Again, I would just highlight how central it was at the trial that plaintiff continued to experience these pain and suffering and loss of normal life and how significant of an issue that was in dispute between the parties and how little other evidence there was to support that view outside of plaintiff's own subjective statements. As a result of that, the defense's ability to impeach plaintiff's credibility to show that she'd said other things elsewhere was critical to their defense and it was prejudicial to exclude it. Your honors, I see my time is up. I would ask the court to reverse for a new trial for the defense evidence at issue. Thank you, counsel. Obviously, you'll have your opportunity for rebuttal, but before we let you go, Justice McHaney or Justice Moore, do you have any questions of Mr. Johnson at this time? I do. I have one other question. On that last point about the cross-examination issue, the appellee contends that you did not preserve that issue. How do you respond to that? Justice, I think the allegation of a failure to preserve, I could be wrong, was directed to the testimony of Dr. Blair Rohde. I believe it was the respondent's position that after we perpetuated the testimony on cross for Dr. Blair Rohde, the trial court struck that testimony, which the trial court obviously saw. I believe it was the appellee's view that we should reobject it to the exclusion of our own evidence. Judge, I would tell you that a ruling on a motion in limine striking testimony is something that preserves that for review. I'd point to the court's decision in Brown v. Baker articulating exactly that rule. While I agree that the denial of a motion in limine doesn't preserve it, striking the testimony certainly does. I'm not aware of any rule that would follow the procedure set out by appellee that after the testimony is struck and the trial court's made its ruling on an evidence deposition that's in evidence that then prior to it being played, we need to redo the entire process all over again with a new objection. What about an offer of proof? Well, Judge, the offer of proof is made in the evidence deposition itself. The purpose of the offer of proof is to articulate to the appellate court what the evidence would have been if it had been allowed. But the evidence deposition was taken. So the trial court had the actual transcript, went through and struck all the portions of the transcript that it believed were inadmissible for grounds that we would disagree with. But the appellate court is well aware of the basis of the testimony since it was provided in the transcript of the evidence deposition. I'm not sure what other offer of proof we would have been able to make given that Dr. Rohde testified in a video evidence deposition prior to the court's ruling. I suppose that would have required us then bringing him from Peoria to the court and then asking him the same questions. But I think the transcript of the evidence deposition fully sets out what the testimony would have been for its consideration. Thank you, Counsel. Thank you, Justice. Justice McKinney? No questions. All right. Well, thank you, Mr. Johnson. Thank you. Mr. Keene, go right ahead. Thank you, Your Honor. Good morning, Your Honors. And may it please the court, Mr. Johnson. I think that there are some points that in all reality need to be conceded. But first, I'd like to mention that it's easy to lose the forest for the trees with regard to this case. The main issue in contention was Voightkin. But you have to understand that with regard to Voightkin, by the way, it originated in the Fifth District in 1996. And it's been the law of the state of Illinois ever since the Supreme Court Supreme Court taking the case and affirming the appellate court that the same part of the body doctor that was in effect prior to that should not be followed. And that there could come a time where somebody had an injury to the same part of the body. But it was in such a remote time frame that it shouldn't be used to try to diminish causation of damages. I think that that issue is fitting to the situation here. Etta Moore went to the emergency room on one occasion, she complained of pain in her right shoulder. There was a differential diagnosis on a farm that said possible rotator cuff tear, or no, possible rotator cuff injury, not tear, as opposed to strength. She never had another visit with a physician about her shoulder for six years. And there was nothing in the record to show that she was being bothered by her shoulder for six years that she had any kinds of complaints other than that one day that she was in pain. I think that that's important in this case, because you also in the big picture, need to realize that Ms. Mandel, and I know she didn't mean it. But her conduct was admitted to was, she hit Etta Moore while Etta Moore was on her scooter and knocked her 10 feet through this crosswalk and across the pavement. She was taken to the emergency room with a scraped up bloody nose and gravel in her mouth. And she took a big hit. As a matter of fact, she's taken more than her share of hits in her life. And I think that that's an important aspect of this case as well, in the sense that the loss of her shoulder for 11 months, or the use of her shoulder for 11 months, is more significant to her than anybody that had a normal use of their other extremities. In her case, since she didn't have the use of her legs, her shoulder and her two arms were the way she lived. And that was her normal life. And that's just the way it was. And of course, as we know, the defendant takes the plaintiff, as she finds the plaintiff. And in Etta's case, it was a significant consequential injury to her body. And she sustained that for a period of time where she was practically immobile because of the shoulder injury. She was bedridden, her family had to take care of her, even to the point of taking her to the bathroom. I don't need to belabor the facts that are in the briefs. But I do think it is worth mentioning that Etta had her share of hits and one of them was the last one on September 30, 2015. I think it would have been a stretching credulity in this case, that the injury that was reported, and I wouldn't say it was an injury or the pain that was reported at the emergency room six years prior, really the cause of her rotator cuff tear, and not the hit that she took from the defendant while she was on her scooter. There's all types of reasons that it affected her way of life. And that was clearly an important part of the case. As a matter of fact, I think that the damages that were awarded, it's very difficult to say that the way she had to live for almost a year because of the accident caused her enough loss of useful life and enough pain and suffering during that period of time to justify or sustain the amount of damages awarded for pain and still not clear here. I mean, the defendant has never said that she was awarded too much money, that his damages were out of line with what happened to her. It's interesting to contemplate what kind of a case we have if there's a new trial granted. In that regard, the defense counsel in closing argument made a series of arguments to the jury and charged the jury to award a substantial amount of damages. You know, that was an obviously clear strategy to minimize any attack that the jury might have considered was being made on Etta and for that matter on her credibility. Now, when the defense says, well, we should have been able to impeach her with this because she said that she didn't have any prior shoulder injury, that's not unreasonable for her to have said after six years of looking back when it was a one-day event, there was no aftercare and she apparently never had any more pain and suffering or need for medical treatment until she was struck on her scooter by the defendant. Addressing the idea that the therapist, the statements to the therapist should have been allowed to impeach her testimony, the trial court looked at that and thought, well, you know, she could have been asked this form by the therapist and asked these questions and she would have answered them the same way relating them to the injuries she was being treated for. She wasn't being treated for the shoulder when she saw the therapist. She wasn't asked by the therapist if her shoulder was causing her the inability to do anything or was hampering her activities and I think that the court looked at that and said, you know, it's a little confusing. I don't think that it's clearly impeaching and I think that that particularly approach by Judge Salverson was not an abuse of discretion. It might have disagreed with whether it should have been admitted or not but under the standard, abuse of discretion standard, I don't think that that can be well considered an abuse of her discretion. As we know, abuse of discretion is the most deferential standards of review and as a matter of fact, the Supreme Court has stated that it's tantamount to no review at all. I think that's been cited in our standard of review. It would have been, I think, misleading to the jury to have allowed impeachment of Etta on questions that were submitted on a form by a therapist who was treating her for hip and shoulder, no, not shoulder, hip and back problems. And finally, let me address for a moment the issue of cross-examination of Dr. Rode. In regard to that issue, I'll have to concede that it was, it had to be an abuse of discretion for the judge to bar completely any cross-examination of Dr. Rode because there simply was no law supporting it and there was law contrary to it that a treating physician should be subject to cross-examination on some of the items laid out. That being said, when you look at the total picture of the evidence that was presented in this case and you compare the testimony of Dr. Rode and the small part that it played in this case and what potential effect having had the opportunity to cross-examine him on prior con, contact with the plaintiff's law firm, cross-examine him on his reprimands, disciplinary reprimands, these items, if he had been allowed to cross-examine, the question really is would it have materially affected the outcome of this case to have had the opportunity to cross-examine Dr. Rode on the things that the defense sets forth they were deprived of cross-examining him about. I submit that it's not necessarily something that would have materially affected the outcome. I think that the, when I look at the jury verdict, I think that in some ways with what she went through for a year after this accident and the fact that she subjectively was still complaining and of course, we know that she still had limitations or she claimed to have limitations in pain, but even if she didn't, this verdict was not excessive and the cross-examination of Dr. Rode was not something that would have altered it and changed the outcome of the case. That being said, are there any questions from any of the members of the panel? Justice McHaney or Justice Moore? No questions. Does that conclude your argument, counsel? Yes. Well, thank you. Mr. Johnson, go right ahead with your rebuttal. Thank you. May it please the court. Let me begin by just acknowledging how difficult it can be for counsel to concede a point and how much I appreciate counsel for plaintiff identifying, I think correctly, that Judge Salverson abused her discretion when she struck the testimony related to the impeachment of Dr. Rode. I know that's a difficult thing to do and it's honorable for him to, I think, have done it after reviewing briefs. I would have a slightly different view of the importance of the testimony of Dr. Rode. As I mentioned in my opening argument, Dr. Rode was the only medical provider who in any way connected the accident of 2016 to any ongoing symptoms that plaintiff had after 2016. For a little bit of comparison, I've told you Dr. Miller doesn't think there's any relationship, but the underlying surgeon, the gentleman who repaired the rotator cuff tear, Dr. Tregg Brown, testified that he would not have expected plaintiff to experience any symptoms or any loss of life after she completed physical therapy. The testimony at trial, which was subject to cross-examination, was that plaintiff completed physical therapy by her own admission, didn't have any symptoms after that, and was discharged after making a full recovery. But for the testimony of Dr. Rode, that would have been the end of the evidence for Ms. Moore to present about any ongoing pain and suffering, any loss of normal life, because there wouldn't have been any expert causal connection to say any allegations she had that she had any ongoing complaints were related to the accident. The only expert who offered any Rode. But for his testimony, none of that comes in, and but for that, plaintiff wouldn't have had a basis to ask for $800,000 for future loss of normal life and future pain and suffering. So from the defense's view, the case would have been very different if Dr. Rode, one, hadn't offered that testimony, and two, if the defendant had had the opportunity they were entitled to, to show the jury the other side of the story with Dr. Rode. There were, as counsel mentioned, communications with plaintiff's law firm where Dr. Rode was asked to issue a paid expert report. There was a history of him testifying exclusively for plaintiffs. There was testimony that he continued to make a lucrative living giving medical legal work opinions for plaintiffs. All of those things were things that would have gone to challenge his credibility, particularly his prior relationship in the same case with plaintiff's counsel. So in our view, Dr. Rode was not just a critical witness. He was the only witness, the only evidence that plaintiffs had in any way to causally connect up any ongoing complaints that plaintiff alleged or claimed to have still had with the actual accident. Every other medical provider said they either would not have expected plaintiff to have any symptoms or that any symptoms she did have were directly as a result of either pre-existing arthritis or the 2009 rotator cuff tear. I would make a couple of comments about the argument on Chris Caro, who was the physical therapist. I would refer the court to page two of our brief, where we described some of the other testimony from Mr. Caro, where he described, among other things, that plaintiff did not in fact make any comments about any shoulder problems during the context of that physical therapy, including where she was performing body weight transfers. She was lifting herself with her arms, bearing the weight on her shoulders, and was not making any complaint to the physical therapist at the time, and was then telling the physical therapist that she could do all these daily living activities without any difficulty of any kind. I appreciate appellant counsel's view that there might have been a way to rehab her, that she was perhaps thinking of something different when she was making those statements, but those admissions are admissions nonetheless. The fact that plaintiff might have had a good explanation for why she made those statements, which appeared to contradict her trial court testimony, would have been the great subject of a redirect examination. We'll never know if she had that explanation because the testimony wasn't in by the trial court, but assuming she would have a good explanation, that would have been the subject to rehab or redirect. It would not be a basis to exclude the testimony. With that said, again, I would thank the court for its time, and I would ask that on all three points that the appellate court reverse and remand with instructions for a new trial with the admission of the evidence described in the briefs. Thank you. Well, thank you, counsel. Before we finish, Justice McCanney or Justice Moore, do you have any final questions? No other questions. No other questions. All right, well, thank you. Counsel, obviously, will take the matter under advisement and issue an order in due course. We hope you all have a great day.